UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 10 CR 228 (LTS) |
| - against – | : | |
| JO ANN CRUPI, *et al*. | : | |
| Defendants. | : | |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT JO ANN CRUPI'S MOTIONS *IN LIMINE*

Eric R. Breslin, Esq.
Melissa S. Geller, Esq.
**Duane Morris LLP**
*A Delaware Limited Liability Partnership*
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey  07102
Tel: 973.424.2000
Fax: 973.424.2001
erbreslin@duanemorris.com

*Attorneys for Jo Ann Crupi*

Defendant Jo Ann Crupi, by and through her undersigned attorneys, respectfully submits this reply memorandum of law in further support of her motions in limine to exclude certain evidence expected to be offered by the government at trial.[1]  Ms. Crupi submits the first point of this memorandum of law on her own behalf.  Our understanding is that the other defendants may be making separate submissions.  Defendants Jerome O'Hara and George Perez join in the second portion of this motion relating to the proposed testimony of Bernard L. Madoff Investment Securities ("BLMIS") investors.

The government opposes Ms. Crupi's motions in limine with respect to:

- her motion to preclude testimony and evidence as to purchases allegedly made with the funds paid to her by BLMIS; and

- her motion to preclude testimony and evidence from victims unassociated with at least one of the defendants and to entirely preclude victim impact testimony.

The government has offered no real argument that supports the relevance of this evidence.  It will serve no purpose other than to antagonize the jury, which is exactly what it is calculated to do.  The ultimate disposition of the funds received by Ms. Crupi, coupled with the victim impact testimony proposed by the government, will encourage the jury to fixate upon the supposed contrast between Ms. Crupi's lifestyle and the losses suffered by BLMIS's investors, rather than the more nuanced inquiry of whether she knew of the fraud at all.  This evidence is irrelevant and prejudicial and should be excluded.

### I. The Government Should Not Be Permitted to Offer Evidence of the "Proceeds" of Ms. Crupi's Alleged Involvement in the BLMIS Fraud.

The government seeks to offer evidence of Ms. Crupi's purchases, her bank accounts, her credit cards, her partner's finances, her purchase of a beach house and a host of other irrelevant

---

[1] Ms. Crupi respectfully continues to reserve the right to make additional applications as trial proceeds, if and when such motions become necessary and appropriate.

2

financial details from Ms. Crupi's life.  The government argues, without explaining how, that such evidence can be relevant to motive.  *See* Gov't Br. in Opp. to Defendants' Motions in Limine, Sept. 12, 2013, p. 5 (ECF #426) (hereinafter "Gov't Br.").  The government's argument, however, conflates compensation and expenditure evidence, two very different concepts.  It is true that *compensation* evidence may be relevant to motive.  *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).  Such evidence, however, carries a substantial risk of undue prejudice.  *See id.*  Thus, the Second Circuit has cautioned that evidence of compensation may only be admitted "where other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth."  *See id.* at 187; *see also United States v. Stahl,* 616 F.2d 30, 31-32 (2d Cir. 1980) (overturning conviction for bribery where prosecutor elicited and made repeated references to wealth, the defendant's net worth, the "Park Avenue offices" of the case participants, and other inflammatory references about money).

Here, the government takes yet another giant step beyond what is permissible and proper.  It seeks a blank check to introduce not only compensation evidence, but evidence as to how Ms. Crupi spent that compensation, so called "expenditure evidence."  Courts have excluded this inflammatory, highly prejudicial expenditure evidence unless it is directly relevant to some element of the case, such as a where the government needs the evidence to show a defendant had an illegal source of income to support a lifestyle beyond his or her legitimate means.  *Compare, e.g., United States v. Carter*, 969 F.2d 197, 201 (6th Cir. 1992) (overturning conviction in part because irrelevant and prejudicial evidence of defendant's expenditures was placed into evidence) *with United States v. Jackson-Randall*, 282 F.3d 369, 282 F.3d 369, 377 (6th Cir. 2002) (evidence of lavish lifestyle permitted to rebut defense that no fraud existed because expenditures showed a lifestyle beyond the defendant's legitimate means and gave rise to an

inference of an unlawful source of income). Merely stating that a defendant made, or sought to make, a lot of money is just not sufficient to support this burden. As the Seventh Circuit observed in *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991): "[t]he government maintains that the evidence established the defendant's motive because it showed that [the defendant] had an 'appetite' for money. But who doesn't?"

Ms. Crupi does not move to preclude evidence of her *compensation*. There may, in fact, be instances where such evidence is relevant. At this point, she moves only to preclude evidence and testimony about her expenditures. The government does not assert that Ms. Crupi had some undisclosed, illicit income stream supporting an outsized lifestyle from which an argument could be fashioned that there is an evidentiary nexus between spending and motive. There is simply no dispute as to the source of the funds she received—all her compensation came from BLMIS. Nor does Ms. Crupi dispute that she received the $2.7 million BLMIS bonus in 2008.[2]

The government offers an alternative theory of relevance by arguing that expenditure evidence goes directly to elements of the charges against Ms. Crupi, yet fails to follow through with any analysis, or even an offer of concrete examples. *See* Gov't Br., at pp. 6-7. We can discern no grounds, and the government offers none, on which Ms. Crupi's purchase of a beach house, or any expenditure, has any bearing on whether she knew that BLMIS was a fraud. Whether she purchased a beach house or not, went on vacation or not, bought a deluxe refrigerator or not, proves nothing about what happened at BLMIS or what Ms. Crupi knew.

---

[2] While the government focuses on Ms. Crupi's beach house, purchased in 2008, this may not be the only expenditure evidence that the government seeks to introduce, considering it produced reams of documents containing private bank, credit card, and other financial records for *both* Ms. Crupi and her partner.

Absent some definitive indication from the government as to just how Ms. Crupi's expenditures make up a necessary element of any of the offenses, this theory of relevance should also fail.[3]

The government next argues that the expenditure evidence is "absolutely necessary in order to understand the full picture of the underlying offense." *Id*. While this initially sounds almost plausible, upon reflection it means next to nothing. What "full picture," does the government wish to show, how does it relate to the charges against Ms. Crupi, and how do Ms. Crupi's expenditures bring it into sharper focus? The government never answers these questions.

The government argues that because the money used to purchase the beach house went from BLMIS to a trust account at the law firm handling the house purchase, the government must show the underlying real estate transaction "[I]n order to understand that Crupi received the entire benefit of that $2.7 million in off-the-books payments, in [other] words, it is absolutely necessary to explain the associated real estate transaction." Gov't Br., at pp. 7-8. This is a strained, manufactured argument. The $2.7 million did go to the law firm Guston & Guston, where most of it was held in a trust account for Ms. Crupi and her partner, a fact that is clearly noted on much of the account paperwork. Even if some of the money was deposited in the Guston & Guston attorney trust account, the fact that it was used for the benefit of Ms. Crupi is easily established without reference to a million dollar beach house or any other expenditure. Reference to the house adds nothing but prejudice.

Even the relevance of the Guston & Guston accounts is questionable considering that Ms. Crupi never denied that she received the full benefit of the $2.7 million, a fact that the government can readily establish by reference to her tax returns for 2008, which it has already

---

[3] Ms. Crupi does not seek to preclude evidence and testimony relevant to the charges on her BLMIS American Express card, which makes up the gravamen of the tax counts (Counts Thirty through Thirty-Three). The American Express charges are an issue entirely separate from how Ms. Crupi spent her BLMIS compensation and IA account gains.

indicated it intends to introduce.  It is undisputed that the full $2.7 million was declared as taxable income, so this payment is apparent and easily provable from the government's exhibits. *See* Gov't List of Proposed Exhibits 500-8.

The United States offers, and can offer, no legal theory or factual support for the argument that Ms. Crupi's expenditures in any way relate to the case against her.  The government complains that Ms. Crupi seeks to exclude a large category of evidence without regard to the particulars of how the government seeks to use the evidence, but the correct focus should be on the flip side of this assertion.  In fact, it is the government that has offered no set of circumstances in which this evidence would ever be relevant, much less outweigh its self-evident, severe prejudice.  Absent some cognizable argument by the government that this evidence is anything more than an attempt to prey on the jury's emotions, it should be excluded.

The government will already be introducing evidence of Ms. Crupi's compensation.  Such evidence is prejudicial in and of itself.  The government should not be permitted to compound the prejudice by introducing irrelevant evidence as to how the money was spent and on what.  A fair trial cannot be one in which the government is allowed to appeal to the worst tendencies of human nature; the prurient, the petty and the resentful.  This type of manipulation should have no role here.  We respectfully request an order precluding evidence of Ms. Crupi's expenditures resulting from her compensation.

## II.     Irrelevant and Prejudicial Evidence of Victim Impact Unrelated to the Defendants Should Be Excluded.[4]

The government also seeks to offer testimony from victims of BLMIS, including victims that had no contact or communication with any of the defendants.  *See* Gov't Br., at pp. 10-12.

---

[4] Defendants George Perez and Jerome O'Hara join Ms. Crupi's reply on this point.

Such evidence is irrelevant, prejudicial, cumulative, and should be excluded, particularly considering at least one of the proposed witnesses is related to a noteworthy public figure.

Thus, testimony about solicitations made by Madoff or "others", attempts by Madoff to raise capital during the liquidity crisis, and requests for redemptions should be excluded unless the testimony directly involves one of the defendants. This is not a case where the existence of the fraud is at issue. Bernard Madoff ran a Ponzi scheme where thousands of people lost money. This is a fact. The *only* issue is whether Ms. Crupi knew of the fraud or whether she, like so many (including, by their own sworn statements, some of the cooperators), was duped by Madoff. The government itself said it best in its opposition to our pre-trial motions when it stated, "whether a particular third party was fooled by Madoff says nothing about the defendants' state of mind. . ." Gov't Opp. to Pre-Trial Motions, Mar. 4, 2013, p. 94 (ECF #348).[5] If this was true when written, then the United States must concede that it is still true now for testimony from the investors.

The government does not allege that Ms. Crupi was involved in soliciting funds for BLMIS either during the liquidity crisis or otherwise. It asserts that she did have some general involvement with redemption requests, which the government can elicit using witnesses with whom she had direct contact. But evidence as to what was said by Bernard Madoff, or anyone else for that matter, to individuals entirely unconnected with Ms. Crupi, simply bears no relevance to the charges against her. It does not illuminate her knowledge of or involvement in the fraud, but does pose an extreme risk of prejudice. *See* Fed. R. Evid. 401, 403. We respectfully request this Court to enter an order precluding victim testimony where the testimony does not relate to direct contact with one of the defendants.

---

[5] The government's argument as to materiality is completely off-point. There is no question that Bernard Madoff's lies were material. The government hardly needs a parade of aggrieved investors to make that point.

The government also seeks to introduce prejudicial and irrelevant evidence as to victim losses. *See* Gov't Br., at p. 11. To satisfy elements of a fraud, "proof of actual loss by the intended victim is not necessary." *United States v. Sokolow*, 91 F.3d 396, 406 (3d Cir. 1996) (quoting *United States v. Copple*, 24 F.3d 535, 544 (3d Cir. 1996)). In some limited circumstances, loss by a victim *may* be offered to show intent by the defendant where intent is a disputed issue. *See United States v. Heimann*, 705 F.2d 662, 669 (2d Cir. 1983). This is not to say that that victim losses are always admissible. Recourse must always be made to the facts and circumstances of each case. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008) ("Relevance and prejudice. . .are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules.); *United States v. Rand*, No. 3:10-cr-182, 2011 WL 4914962, *3-4 (N.D.N.C. Oct. 17, 2011) (testimony should be narrowly confined to serve an appropriate purpose).

In this case, the government argues that victim losses somehow establish Ms. Crupi's intent to defraud. *See* Gov't Br., at p. 11. This is a curious argument since, as noted above, many of these victims had no contact whatsoever with Ms. Crupi or any other defendant. The government fails to advance any argument as to how a victim's loss makes any contested issue, much less a defendant's state of mind, more or less likely. *See* Fed. R. Evid. 403. How does a victim's monetary loss add to government's proof? Perhaps losses support the idea that BLMIS was a fraud and Bernard Madoff a criminal, but these are hardly contested facts and would be cumulative evidence at best. Such evidence could show that people lost a lot of money, but this is not relevant to a fraud prosecution absent some other factor. *See Heimann*, 705 F.2d at 669. Evidence as to victim losses does not, in any way, make it more or less likely that Ms. Crupi knew what was occurring at BLMIS. It just makes her look "bad".

Contrast this case with *Copple*, in which the Third Circuit recognized that victim losses may be relevant to the issue of intent. In *Copple*, the defendant attempted to argue that he just made bad business decisions, but had not committed fraud. *See* 24 F.3d at 545. Yet, when the victims were required to make up the losses themselves, the defendant refused to part with any of the property obtained from the fraud. *See id.* The fact of the losses, coupled with the defendant's refusal to personally contribute to the losses, supported the inference of a fraud and rebutted an argument for lack of intent. *See id.* Thus, it was directly relevant. *See id.* Likewise, in *United States v. Sokolow*, the defendant was the "mastermind" of the scheme. Without his intent to defraud, there was no fraud at all. *See Sokolow*, 91 F.3d at 401.

This case is markedly different. Proof that the fraud occurred and that losses were inflicted on the investors, without more, does not comprise competent evidence as to Ms. Crupi's knowledge and intent. In *Copple* and *Sokolow*, there was a nexus connecting these two concepts. Here, there is none. We respectfully request this evidence be excluded.

The government's theory of admissibility of victim testimony is based on little more than an unsubstantiated, unsupported blanket claim of relevance. Absent a cogent argument that this evidence is somehow relevant to the facts and circumstances of this case, it should be excluded. Even if the Court should find that the evidence has some limited relevance, the tremendously prejudicial nature of the evidence far outweighs relevance on any theory.

**III.   The Reference to the Beach House Should be Stricken from the Indictment.**

Ms. Crupi also moves to have the reference to her purchase of a beach house stricken from the indictment as surplusage. *See* S10 Indictment, ¶ 45; *see also* Fed. R. Crim. P. 7 (d). The government has not addressed this motion. Ms. Crupi respectfully requests the Court to order that this reference be stricken.

## **CONCLUSION**

For all the reasons set forth above, Ms. Crupi respectfully moves for an order excluding certain evidence and exhibits that she anticipates may be offered by the government at trial and to strike the reference to the beach house from the indictment.

Dated: Newark, New Jersey
September 18, 2013

                                                          */s/ Eric R. Breslin*
Eric R. Breslin, Esq.
Melissa S. Geller, Esq.
**DUANE MORRIS LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
Telephone: 973.424.2000
Facsimile: 973.424.2001
*Attorneys for Defendant JoAnn Crupi*